David Edward DAWSON, Petitioner-Appellant,

v.

L. L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.

No. 30027.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1971.

Rehearing Denied and Rehearing En Banc April 5, 1971.

Certiorari Granted June 21, 1971. See 91 S.Ct. 2268.

David Edward Dawson, pro se.

Robert H. MacKenzie, Tampa, Fla., Court-appointed for petitioner-appellant.

Earl Faircloth, Atty. Gen., Tallahassee, Fla., Morton J. Hanlon and P. A. Pacyna, Asst. Attys. Gen., Lakeland, Fla., for respondent-appellee.

Before GEWIN, COLEMAN and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

In the Circuit Court of Hillsborough County, Florida, David Edward Dawson, the appellant here, represented by different counsel in each case, entered two pleas of guilty to murder, allegedly committed at different times, in the second degree. The original indictments had charged murder in the first degree. One indictment charged Dawson with the murder of Vernon Purvis on May 28, 1967. In that case, Dawson was represented by court appointed counsel, Tom Y. Sawyer. The other indictment charged Dawson with the murder of Charles A. Hayes on December 6, 1966. In that case, Dawson was represented by court appointed counsel Ronald K. Cacciatore. The Florida District Court, upon the pleas of guilty sentenced Dawson to concurrent life terms in the Florida State Penitentiary.

Subsequently, Dawson moved for post-conviction relief under Rule 1.850, Florida Rules of Criminal Procedure, 33 F.S.A. The motion was denied without an evidentiary hearing. The denial was affirmed by the Florida District Court of Appeals, Dawson v. State, 224 So.2d 388 (1969), which held that "The record conclusively shows that the pleas of guilty were voluntarily made * * *. At the time of sentencing, the appellant was given the opportunity to withdraw his previous plea of guilty but refused."

Dawson then applied to the United States District Court for the writ of habeas corpus, where he was again represented by court appointed counsel. He contended that he was entitled to habeas corpus relief because in the state court his counsel was unable to go forward with the defense of his case, his plea of guilty was coerced by threats of the state that his wife would be prosecuted as an accomplice to one of the murders, that his plea of guilty was coerced because threats had been made against the safety of his wife and child if he should reveal the identity of the actual murderer in defense of his own innocence, that the state and his attorney in one of the murder cases had "made a deal", the state court had declined to appoint counsel of his designation, and the state court failed to inquire into the factual details concerning threats to his wife.

This was a habeas corpus case in which the United States District Court would have been entirely justified in deciding the issues on the basis of an adequate state court record, Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Out of an abundance of caution, no doubt prompted by the reversals which have occurred where plenary hearings were denied, the District Court granted and held a full evidentiary hearing. Dawson was present and testified, as did his former counsel. The District Judge found that the guilty pleas had been intelligently and voluntarily entered. We affirm.

The only contentions of the appellant worthy of discussion are those with reference to the voluntary character of the pleas of guilty.

Dawson does not attack the voluntary character of the plea entered in the indictment which charged him with the murder of Vernon Purvis, and in which he was represented by Attorney Tom Y. Sawyer.

The attack is leveled at the plea entered to the indictment charging him with the murder of Charles A. Hayes, in which he was represented by Mr. Cacciatore. The state court record reveals that for two and one half months numerous notices and motions were filed on behalf of the defendant, such as notice of defense of insanity, motion to determine the mental condition of the defendant, motion for preliminary hearing, motion to control prejudicial publicity, motion for bail, motion for bill of particulars, motion to quash, motion to produce,

motion for the appointment of an investigator, and motion to compel the disclosure of all evidence favorable to the defendant. There were hearings on these motions. We agree with the findings of the state court on the original Rule 1.850 proceeding that this defendant had the benefit of able, industrious, energetic, and intelligent representation.

To return to the pleas of guilty, on October 2, 1967, defense counsel indicated a desire of the defendant to plead guilty to the crime of murder in the second degree in both cases. The state court record reveals that thereafter Dawson was thoroughly interrogated in open court by the trial judge and his own counsel in response to which he said he was pleading guilty because he believed that he was guilty, that the State's attorney and his two defense attorneys had explained to him that he could get two life sentences to run consecutively, that he had been informed of his right to obtain a jury trial in the case and to have a jury hear his case and determine it, that he had a right to go forward with all pending motions. At one point Dawson was asked, "You feel certain you want to do this?" His answer was, "Yes, sir." At another point he was asked if his plea was entered knowingly, to which he responded in the affirmative.

The pleas of guilty were accepted and sentence was set for a date nine days later, October 11, 1967. Occurrences which took place on sentence day are the basis for the habeas corpus claim that Dawson had not knowingly, intelligently, and voluntarily pleaded guilty.

As the Court was preparing to pass sentence for the second degree murder of Charles A. Hayes, the following took place (quoting):

At Page 7 of the Sentence Transcript.

(By Attorney Cacciatore)

Q. All right, Mr. Dawson, you have heard Mr. Burton representing the State of Florida say just a moment ago that he had no objection to our withdrawing our plea of guilty in this case. Have I discussed this matter with you thoroughly?

A. Yes, sir.

Q. Have I advised you that under the circumstances with regard to what you wrote in this letter that your being an accomplice to this B and E (breaking and entering) made you just as guilty legally as if you had done the deed itself?

A. Well, you explained it to me, yes, sir, and I explained the circumstances to you. But—

Q. Right, and I explained this to you. Is it your desire now to have your plea of guilty withdrawn?

A. No, sir.

Q. Do you still wish to let the record stand, that is, with regard to your plea of guilty to second degree murder in this case?

A. Yes, sir.

At Page 12 of the Sentence Transcript.

THE COURT: You have previously withdrawn your plea of not guilty to first degree murder and previously several days ago at a hearing tendered and the State and the Court accepted your plea of guilty to second degree murder of Mr. Hayes. Do you now wish to stand by that plea?

THE DEFENDANT: Yes, sir.

THE COURT: I previously asked you at another hearing if you pled guilty to second degree murder of Mr. Hayes because you are guilty. I would again like for you to tell me if your plea is entered, if your plea of guilty to second degree murder is entered because you are guilty of second degree murder?

THE DEFENDANT: Well, I'm not guilty but I'm going to plead guilty to second degree murder. I mean, I'll plead guilty, yes, sir. I mean, Judge Bruton, if you have read the letter you know what I'm talking about. But I mean, I'll plead guilty to second degree murder. Rather than see my wife and family killed, I will.

MR. CACCIATORE: David, if I may, your honor, without interrupting the court, if you were present during this B and E, that you are as guilty of this as the man that did it according to your position in the thing. I also explained to you if you wanted to, this plea could be set aside and we could go to trial on the thing.

THE DEFENDANT: No, sir.

It is now argued that the statements at sentencing were equivocal because the defendant stated, in particular, "Well, I'm not guilty but I'm going to plead guilty to second degree murder. I mean, I'll plead guilty, yes, sir. I mean, Judge Bruton, if you have read the letter you know what I am talking about. But I mean, I'll plead guilty to second degree murder. Rather than see my wife and family killed, I will."

"The letter" referred to a communication written by Dawson after his guilty plea, in which he claimed his father had told him of telephone threats from anonymous persons that he had better not reveal the identity of the actual murderer in one of the cases, which, Dawson said, would have been necessary if he testified in an effort to establish his own innocence. The record reveals, however, that Dawson knew of the threats, if they existed, before he withdrew his pleas of not guilty to first degree murder and entered his pleas of guilty to second degree murder.

It will be seen from the foregoing that the real issue in this appeal is whether the trial court, of its own motion at a time when the defendant refused to ask for it, could or should have set aside the guilty pleas. This is not a case in which a defendant, represented by counsel, moved to withdraw his plea and saw his motion denied. On an understanding that he wished to plead guilty to second degree murder the defendant had been allowed to withdraw his pleas of not guilty to the more serious charge, which carried possible capital penalties. If the

Court of its own motion had set aside the guilty pleas to second degree murder, nothing would have remained but to allow the defendant to plead over to the original indictments. This would have resulted in a trial, with the possibility of capital punishment. Had the Court *sua sponte* adopted that course without the consent of the defendant, we most likely now would be confronted with a plea for the reversal of that action as an unauthorized enhancement of jeopardy.

■ Under the circumstances of this case, when the defendant refused to withdraw his pleas, we fail to see how the Court could have ordered it done for him. Of course, prisoners are not to be found guilty and sentenced on equivocal pleas of guilty. The trial court realized this, for he kept offering the defendant an opportunity to withdraw his pleas. Defendants cannot have it both ways—one way when they plead and another when they come to sentence, unless they express a willingness to have the pleas set aside.

■ Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, was decided on a record which contained no affirmative showing that the defendant's plea of guilty had been intelligently and voluntarily entered. Here, there was a complete record, containing all the indicia of voluntariness on the day the pleas were entered. Thereafter, the defendant sought to equivocate, and did equivocate, but he refused to take the one brief step necessary to set aside the pleas. Courts cannot be condemned for an abuse of discretion for acting as did the Florida District Court under these circumstances.

We note our awareness of North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. In that case, in pleading guilty to second degree murder, Alford said, "I'm not guilty but I plead guilty". He later alleged that his plea was involuntary because it was entered in fear of the death penalty. For the reasons set forth in the opinion of the

Court, the validity of the plea was sustained.

The judgment of the District Court is affirmed.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.